Chad Conelly, SBN 022394
**MOLEVER CONELLY PLLC**
Indian Bend Corporate Centre
8161 E. Indian Bend Road, Suite 103
Scottsdale, Arizona 85250
Telephone: 480-268-2658
cc@arizonalegal.com
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristin Schwartzkopf,<br><br>          Plaintiff,<br><br>v.<br><br>The GEO Group, Inc.,<br><br>          Defendant. | Case No.:<br><br>**COMPLAINT** |

Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff Kristin Schwartzkopf is seeking judgment, relief and damages brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. based upon the unlawful conduct of her former employer, The GEO Group, Inc., when she worked for GEO at the Arizona State Prison-Kingman in Kingman, Arizona.

2. The GEO Group, Inc. violated the ADA by discriminating against her based on her disability and demoting her based on her disability.

## PARTIES, VENUE, AND JURISDICTION

3. Kristin Schwartzkopf is, and at all relevant times was, a resident of Mohave County, Arizona.

4. Defendant The GEO Group, Inc. (hereinafter referred to as "GEO") is a Florida-based company that does business in Mohave County, Arizona.

5. During the events at issue in this case, GEO managed the Arizona State Prison-Kingman in Kingman, Arizona.

6. The events at issue in this case occurred in Mohave County, Arizona.

7. This Court has subject matter jurisdiction over this dispute.

8. This Court has jurisdiction over Plaintiff's ADA claims under 28 U.S.C. § 1331 and 42 U.S.C. § 12101 et seq. (federal question within this Court's jurisdiction).

9. This Court has personal jurisdiction over the parties.

10. Venue in this Court is proper.

## GENERAL ALLEGATIONS

11. Ms. Schwartzkopf worked at the Arizona State Prison-Kingman in Kingman, Arizona (hereinafter referred to as "the Prison").

12. Upon information and belief, effective December 1, 2015, GEO was awarded a contract to assume management of the Prison.

13. When GEO took over management of the Prison, Ms. Schwartzkopf was working at the Prison as the Human Resources Manager.

14. When GEO took over management of the Prison, GEO offered Ms. Schwartzkopf the opportunity to stay employed when GEO assumed management of the Prison as the Human Resources Manager.

15. When GEO offered Ms. Schwartzkopf the opportunity to stay employed as the Human Resources Manager when GEO assumed management of the Prison, Ms. Schwartzkopf accepted the offer and thereafter worked for GEO as the Human Resources Manager of the Prison.

16. During the transition period after GEO assumed management of the Prison, GEO put in place a transition team to handle the transitional tasks including tasks involving employee files.

17. During the transition period after GEO assumed management of the Prison, Ms. Schwartzkopf was not part GEO's transition team.

18. During the transition period after GEO assumed management of the Prison, Ms. Schwartzkopf's primary duty was to host job fairs.

19. In May 2016, Ms. Schwartzkopf began reporting to Karen Broadwater, Human Resources Director - Western Region.

20. At that time, Ms. Broadwater reported to Alex Londono, VP, Field Human Resources.

21. Ms. Broadwater and Mr. Londono did not work at the Prison but would occasionally visit the Prison during the time Ms. Schwartzkopf worked as the Human Resources Manager there.

22. While employed with GEO, Ms. Schwartzkopf informed GEO about her disability.

23. While employed with GEO, when Ms. Schwartzkopf was in and out of the hospital numerous times, Ms. Broadwater called Ms. Schwartzkopf several times to see how she was doing, and Ms. Schwartzkopf was upfront and honest with Ms. Broadwater about her condition and disability – she told Ms. Broadwater that she had been diagnosed with an Anxiety Disorder.

24. Ms. Broadwater was not the only one at GEO that was aware of Ms. Schwartzkopf's disability - others in upper management were aware of it.

25. While employed with GEO, Ms. Schwartzkopf had a severe anxiety attack in a department meeting and had to be rushed to the hospital by the Warden's Administrative Assistant.

26. Warden Wrigley sent flowers to Ms. Schwartzkopf at home after her hospitalization.

27. In August 2016, Ms. Schwartzkopf was placed on a Performance Approval Plan that was not disciplinary in nature.

3

28. Ms. Broadwater assured Ms. Schwartzkopf several times that the Performance Approval Plan was not disciplinary action, and Ms. Broadwater told Ms. Schwartzkopf the Performance Approval Plan was a direct order from the Vice president at corporate.

29. After Ms. Schwartzkopf was placed on a Performance Approval Plan, Ms. Broadwater had nothing negative to say about Ms. Schwartzkopf; rather, Ms. Broadwater told Ms. Schwartzkopf the department was looking good and she could tell Ms. Schwartzkopf was working hard.

30. Overall, Ms. Broadwater's communications to Ms. Schwartzkopf were positive and didn't concern any improvement needs.

31. Later in 2016, Ms. Schwartzkopf was taken off the Performance Approval Plan.

32. When she was taken off taken off the Performance Approval Plan, Ms. Schwartzkopf was told she was doing a wonderful job.

33. When she was taken off taken off the Performance Approval Plan, Ms. Broadwater and Warden Wrigley told Ms. Schwartzkopf the department had never run better and that everything was corrected on the Performance Approval Plan.

34. On December 12, 2016, Ms. Broadwater sent an email to Ms. Schwartzkopf stating, "Kristin, this is amazing. Your progress is outstanding! Great job. You understood what you needed to do, made a plan, and kept at it. Excellent work. You are appreciated...now that you have a much improved staff, the sky's the limit! Keep up the good work, and let me know how I can support you. Karen."

35. On or about March 15, 2018, Ms. Schwartzkopf had a conference call with Ms. Broadwater and Ms. Lewis during which they told Ms. Schwartzkopf that they were happy Ms. Schwartzkopf was successful with her audit and her skills, and they were happy to see what the new year would bring. There was no discussion of any problems with her performance.

4

36. On or about March 22, 2017, Ms. Broadwater met with Ms. Schwartzkopf.

37. During that meeting, Ms. Broadwater told Ms. Schwartzkopf she was about to make her day bad - Ms. Broadwater said she knew Ms. Schwartzkopf had been "really sick" and in the hospital a couple of times and that Ms. Schwartzkopf was dealing with a lot of stress from that, as well as losing the two HR specialist employees to different positions at the facility and having to worry about replacing them.

38. During that meeting, Ms. Broadwater told Ms. Schwartzkopf that Ms. Schwartzkopf had great potential but that GEO was demoting her down to the position of HR Specialist so Ms. Schwartzkopf wouldn't have to worry about running a department with her medical issues because Ms. Broadwater said the Manager position Ms. Schwartzkopf had can be very stressful and, with the demotion, Ms. Schwartzkopf would have time for herself to get well.

39. During the demotion meeting, Ms. Broadwater expressly told Ms. Schwartzkopf the reason for GEO's demotion of Ms. Schwartzkopf's was due to Ms. Schwartzkopf's disability.

40. Ms. Schwartzkopf was shocked - her medical problems had never impacted her work other than the few brief times she had to be out for medical reasons and used her PTO, and Ms. Schwartzkopf had just received a positive performance evaluation and been praised for her great work by Ms. Broadwater and Sunny Lewis, Regional HR Manager.

41. During that meeting, Ms. Schwartzkopf expressed her shock and surprise about the demotion, reminded Ms. Broadwater about the praise she had received for her work, and asked about this - Ms. Broadwater hesitated and then said she believed it was just best for the facility to demote her.

42. GEO prepared a memo memorializing GEO's demotion of Ms. Schwartzkopf.

43. That memo was substantively false – during the demotion meeting, Ms. Broadwater expressly told Ms. Schwartzkopf the reason for GEO's demotion of Ms.

5

Schwartzkopf's was due to Ms. Schwartzkopf's disability. Yet, that information was not included in the memo.

44. When Ms. Broadwater gave Ms. Schwartzkopf a copy of the memo at the end of the demotion meeting, Ms. Broadwater said nothing about any of the purported performance problems addressed in the memo.

45. Ms. Schwartzkopf appealed the demotion to GEO.

46. GEO notified Ms. Schwartzkopf that her concern had been investigated and GEO was unable to conclude that any GEO policy had been violated with respect to the demotion.

47. Ms. Schwartzkopf submitted another appeal shortly thereafter, which GEO denied.

48. Ms. Schwartzkopf filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

49. On August 31, 2018, the EEOC issued a right to sue letter to Ms. Schwartzkopf and she brings this action within 90 days of that letter.

## **VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

50. Ms. Schwartzkopf realleges each allegation set forth in this Complaint and incorporates them here by reference.

51. Ms. Schwartzkopf is a "qualified individual" with a disability as defined in the Americans with Disabilities Act (the "ADA").

52. GEO is an "employer" and "covered entity" under the ADA.

53. Ms. Schwartzkopf was a qualified individual able to perform the essential functions of the job.

54. Ms. Schwartzkopf suffered adverse employment actions because of her disability.

### **Discrimination**

55. Ms. Schwartzkopf realleges each allegation set forth in this Complaint and incorporates them here by reference.

6

56.     GEO discriminated against Ms. Schwartzkopf based on her disability in violation of the ADA by demoting her due to her disability or GEO's perception that Ms. Schwartzkopf was disabled and Ms. Schwartzkopf's record of disability.

57.     Ms. Schwartzkopf suffered adverse employment actions by way of GEO discriminating against her because of her disability, including being demoted and receiving less compensation.

58.     GEO's discrimination against Ms. Schwartzkopf constitutes a violation of the ADA.

## Damages

59.     Because of GEO's unlawful actions as stated in this Complaint, Ms. Schwartzkopf has been damaged.

60.     As a proximate result of GEO's violations of the ADA as stated in this Complaint, Ms. Schwartzkopf has suffered substantial losses, including loss of earnings.

61.     As a proximate result of GEO's violations of the ADA as stated in this Complaint, Ms. Schwartzkopf has suffered impairment and damage to her good name and reputation.

62.     As a proximate result of GEO's violations of the ADA as stated in this Complaint, Ms. Schwartzkopf suffered embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

63.     The discriminatory conduct of GEO was outrageous and malicious, was intended to injure Ms. Schwartzkopf, and was done with reckless indifference to Ms. Schwartzkopf's protected civil rights, entitling Ms. Schwartzkopf to an award of punitive damages.

## JURY DEMAND

64.     Ms. Schwartzkopf requests trial by jury in this action.

WHEREFORE, Ms. Schwartzkopf requests that the Court enter a judgment in her favor against GEO as follows:

7

A. For an award of Ms. Schwartzkopf's damages for loss of wages, benefits, and promotional opportunities, including an award of back pay and front pay for all lost salary and benefits.

B. For an award of damages to compensate Ms. Schwartzkopf for mental anguish, humiliation, embarrassment, and emotional injury.

C. For all other damages permissible under the Americans with Disabilities Act.

D. For an order enjoining GEO from engaging in the unlawful employment practices to which it subjected Ms. Schwartzkopf, and other remedial action as may be appropriate, which may include, but is not limited to, reinstatement of Ms. Schwartzkopf with back pay, and any other equitable relief as the court deems appropriate.

E. For an award of punitive damages.

F. For an award of reasonable attorneys' fees and the costs of this action.

G. For any other and further relief as this Court may deem just and proper.

DATED: November 27, 2018.

**MOLEVER CONELLY PLLC**

By:  s/ Chad Conelly / 022394
 Chad Conelly
 Attorneys for Plaintiff

## **VERIFICATION**

I, Kristin Schwartzkopf, verify and state under penalty of perjury that I have read this Complaint and know the content of it, and that the content of this Complaint is true and correct to the best of my knowledge.

*[signature]*
Kristin Schwartzkopf

_____11-26-18_____
Date

MOLEVER CONELLY PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250